**KRAFT FOODS, INC., Plaintiff–Appellant,**

v.

**INTERNATIONAL TRADING COMPANY and Houston Processing Ltd., Defendants–Appellees.**

No. 99–1240.

United States Court of Appeals, Federal Circuit.

Feb. 14, 2000.

**1364**

James M. Amend, Kirkland & Ellis, of Chicago, Illinois, argued for plaintiff-appellant. With him on the brief were Kevin H. Rhodes and Garret A. Leach.

Jeffrey S. Ward, Lathrop & Clark, LLP, of Madison, Wisconsin, argued for defendants-appellees. With him on the brief were Theodore J. Long, Kenneth B. Axe, and Jeffry W. Smith.

Before MICHEL, Circuit Judge, SMITH, Senior Circuit Judge, and RADER, Circuit Judge.

MICHEL, Circuit Judge.

On July 13, 1998, Kraft Foods, Inc. ("Kraft") sued International Trading Company and Houston Processing Ltd. (collectively, "ITC") in the United States District Court for the Western District of Wisconsin, alleging infringement of its U.S. Patent No. 5,657,873 ("the '873 patent"). On January 14, 1999, the district court granted ITC's motion for summary judgment of no literal infringement and no infringement under the doctrine of equivalents of claim 2, the only asserted claim of the '873 patent. *See Kraft Foods, Inc. v. International Trading Co.*, No. 98–C–0491–S, slip op. at 16 (W.D.Wis. Jan. 14, 1999). Kraft appeals. Because we hold that (1) the district court correctly construed the "protecting back panel" as relatively rigid, and thus appropriately granted summary judgment of no literal infringement by the accused product having flexible back labels, but (2) misapplied our decision in *Chiuminatta Concrete Concepts, Inc. v. Cardinal Industries, Inc.*, 145 F.3d 1303, 46 USPQ2d 1752 (Fed.Cir.1998), to claim 2, which is not drafted in the means-plus-function format, and thus improperly granted summary judgment of no infringement under the doctrine of equivalents, we *affirm-in-part, reverse-in-part,* and *remand.*

## BACKGROUND

Food packaging comprising a compartmentalized rigid base tray and a flexible film hermetically sealing the open tops of the tray compartments is well-known in the art. An outer enclosure, perhaps made of cardboard, typically encloses the tray to provide label information to the consumer, to allow the sealed tray to be displayed in an upright position, and to preserve the tray's structural integrity. Unfortunately, such enclosures are relatively expensive and environmentally unfriendly.

The '873 patent, entitled "Food Package Having a Compartmentalized Rigid Base Tray," describes various structures to be applied to the bottom of the compartmentalized rigid base tray in lieu of the outer enclosure. These structures employ less material than the prior art enclosures, and thus minimize costs and provide environmentally friendlier packaging. A "relatively stiff back panel," as recited in the written description, can perform many of the functions previously associated with an outer cardboard enclosure, such as providing rigidity, protecting the tray bottom, providing additional area for product information, and providing a stand-up feature. *See* '873 patent, col. 3, ll. 36–47; col. 4, ll. 18–21. The patent also discloses the use of a plastic grid insert and a keel structure to provide the stand-up feature and the use of a "thin pressure sensitive label" to provide labeling information. *See* '873 patent, col. 4, ll. 22–26. The '873 patent finds commercial application in the packaging of Kraft's own "Oscar Mayer Lunchables" lunch combination products.

ITC also produces lunch combination products packaged in three and four-compartment trays. Like Kraft's Lunchables products, ITC's products lack an outer enclosure. The tops of the multi-compartment plastic trays are hermetically sealed with a flexible film. Labels, made of white paper stock and coated with a polypropylene laminate, adhere to the bottom of the three and four-compartment trays to provide nutritional and other product information. These labels bridge the gaps between the tray compartments.

On July 13, 1998, Kraft sued ITC in the United States District Court for the Western District of Wisconsin, alleging that the packaging of ITC's lunch combination products infringed independent claim 2 of the '873 patent and its dependent claims. Claim 2 recites:

2. A food package comprising:

(a) a generally rectangular rigid plastic base tray having four side edges, a top, a bottom located in a bottom plane, and a plurality of compartments, said base tray having peripheral and internal flanges, said peripheral flanges defining said four side edges of said tray, each said compartment being defined by side walls extending from said flanges and a bottom wall located along the bottom plane, said flanges sized and adapted to form a hermetic seal with a film attached thereto,

(b) a film adapted to be affixed to said flanges so as to hermetically seal said compartments, said film adapted to receive and display information, and

(c) a *protecting back panel* adhered immovably to said bottom walls of at least two of said compartments of said tray, said back panel being planar and adapted to receive and display information.

(Emphasis added.) In its January 14, 1998 claim construction and summary judgment opinion, the district court construed the term "protecting back panel" as having a "special meaning," i.e., a "relatively rigid structure[] that serve[s] the function of protecting the food tray compartments from indentation and damage."[1] *Kraft Foods*, slip op. at 8. The court further stated that, "[w]hen adhered immovably to more than one compartment of the food tray [the 'protecting back panels'] serve the additional function of enhancing the structural integrity of the tray." *Id.* The court declared the term "protecting back panel" to specifically exclude "flexible, pressure-sensitive labels which the patent specification consistently distin-

1. In its opinion, the district court used the terms "relatively stiff" and "relatively rigid" interchangeably.

guishes from back panels." *Id.* at 10. Because the district court found that the labels on the bottom of ITC's trays were not relatively rigid, the court granted ITC's motion for summary judgment of no literal infringement. *See id.* at 15.

In addition, the district court construed *Chiuminatta* as precluding infringement under the doctrine of equivalents where the accused structure was "not new technology" arising after the time that the patent issued. *See id.* at 15–16. Stating that "[a] flexible, pressure sensitive label is not new technology," the district court held that ITC's use of labels on tray bottoms could not infringe limitation (c) of claim 2 under the doctrine of equivalents as a matter of law. *See id.* at 16.

## DISCUSSION

 "An infringement analysis entails two steps. The first step is determining the meaning and scope of the patent claims asserted to be infringed. The second step is comparing the properly construed claims to the device accused of infringing." *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 976, 34 USPQ2d 1321, 1326 (Fed.Cir.1995) (*en banc*), *aff'd,* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996) (citations omitted).

## I. Claim Construction

 Claim construction is a question of law decided by the court. *See id.* at 979, 34 USPQ2d at 1329. "[I]n interpreting an asserted claim, the court should look first to the intrinsic evidence of record, i.e., the patent itself, including the claims, the specification and, if in evidence, the prosecution history." *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582, 39 USPQ2d 1573, 1576 (Fed.Cir.1996). Within this intrinsic evidence, "[t]he appropriate starting point ... is always the language of the asserted claim itself." *Comark Communications, Inc. v. Harris*

*Corp.,* 156 F.3d 1182, 1186, 48 USPQ2d 1001, 1005 (Fed.Cir.1998). A claim term should be given its ordinary meaning unless the specification or prosecution history provide a special, different meaning or definition. *See Kegel Co. v. AMF Bowling, Inc.,* 127 F.3d 1420, 1427, 44 USPQ2d 1123, 1127 (Fed.Cir.1997). There is a "heavy presumption in favor of the ordinary meaning of claim language." *Johnson Worldwide Assocs. v. Zebco Corp.,* 175 F.3d 985, 989, 50 USPQ2d 1607, 1610 (Fed. Cir.1999); *cf. Markman,* 52 F.3d at 980, 34 USPQ2d at 1330 ("[A]ny special definition given to a word must be clearly defined in the specification."). Although the written description may aid in the proper construction of a claim term, limitations, examples, or embodiments appearing only there may not be read into the claim. *See Comark,* 156 F.3d at 1186–87, 48 USPQ2d at 1005.

 After the claims at issue have reasonably been construed, a district court may grant summary judgment "when it is shown that the infringement issue can be reasonably decided only in favor of the movant, when all reasonable factual inferences are drawn in favor of the non-movant." *Voice Techs. Group, Inc. v. VMC Sys., Inc.,* 164 F.3d 605, 612, 49 USPQ2d 1333, 1337 (Fed.Cir.1999); *see* Fed. R.Civ.P. 56(c). This court reviews both a district court's claim construction and its grant of summary judgment *de novo. See Johns Hopkins Univ. v. Cellpro, Inc.,* 152 F.3d 1342, 1353, 47 USPQ2d 1705, 1713 (Fed.Cir.1998).

## A. Relatively Rigid

 The district court began its claim construction by presuming that the "protecting back panel" of claim 2 did *not* need to be "relatively stiff." Under the doctrine of claim differentiation, two claims of a patent are presumptively of different scope. *See Comark,* 156 F.3d at 1187, 48

USPQ2d at 1005–06; *Tandon Corp. v. U.S. Int'l Trade Comm'n*, 831 F.2d 1017, 1023, 4 USPQ2d 1283, 1288 (Fed.Cir.1987). The district court noted that claim 1, which also recites a "back panel," expressly declares its back panel to be comprised of "a flat relatively stiff planar sheet." [2] Claim 2, by contrast, does not explicitly require that its "protecting back panel" be relatively stiff.

The district court, however, viewed the written description and prosecution history as overcoming this presumption. The district court focused on the unequivocal declaration in the written description that *"[a]ny of the back panels* would be constructed of a relatively stiff material such as paperboard or a relatively thick plastic material such as high density polyethylene." '873 patent, col. 9, ll. 43–45 (emphasis added). The district court further recognized that, in prosecuting application claim 41 (the predecessor to issued claim 2), the inventors previously had required that the "protecting back panel" include an "end portion" to allow the food tray to be displayed vertically. Although the inventors later amended application claim 41 to eliminate this "end portion" of the "protecting back panel," they did not indicate that they were eliminating its relatively stiff attribute. The district court also noted that the inventors had amended application claim 41 to require that the "protecting back panel" be "non-bendable" in an attempt to overcome a prior art reference disclosing a bag supported by a hinged paperboard panel. In response to this amendment, the examiner had stated that the written description did not support a characterization of the back panel as "non-bendable," since it described the back panel as composed of paperboard or HDPE (high density polyethylene). The examiner acknowledged that the panel was "stiff," however.

The applicants subsequently removed this "non-bendable" requirement.

Kraft offers a litany of arguments against the district court's requirement that the "protecting back panel" be "relatively rigid." First, Kraft reiterates the presumption arising from the doctrine of claim differentiation, arguing that the inventors plainly knew how to say "relatively stiff" when they so desired. Kraft also contends that "protecting back panel" must be given its plain and ordinary meaning of "a label or other structure adhered to the back of the food tray that protects the structural integrity of the claimed food package." Second, Kraft maintains that the written description does not support a special meaning of "protecting back panel" as being "relatively stiff," citing its express declaration that "[t]he back panel may take many different forms." '873 patent, col. 3, l. 48. Kraft disputes the effect of the written description's statement that "[a]ny of the back panels would be constructed of a relatively stiff material such as paperboard or a relatively thick plastic material such as high density polyethylene," claiming that this declaration applies only to those embodiments that use the back panel to provide the stand-on-edge feature, as shown in Figures 10–15. *See* '873 patent, col. 8, l. 11—col. 9, l. 41.

Finally, Kraft denies that the prosecution history is supportive of the "relatively stiff" nature of the "protecting back panel." Kraft emphasizes that the inventors amended application claim 41 to eliminate both the "non-bendable" and "end portion" limitations. Kraft notes that the stand-on-edge feature, which an "end portion" of the "protecting back panel" would have enabled, is claimed by a related Kraft patent issuing from the same parent application

2. Claim 1 recites:
 1. A food package comprising: ...
 (c) *a back panel comprising a flat relatively stiff planar sheet* which is adhered immovably to the bottom walls of at least two of said compartments of the tray to preserve the structural integrity of the package and providing means to convey label information.
 (Emphasis added).

over two-and-a-half years before the '873 patent. *See* U.S. Patent No. 5,375,701 ("the '701 patent"). Each of the '701 patent's claims requires a "back panel comprising a flat relatively stiff sheet" so that the "package can stand upright." '701 patent, col. 14, l. 67—col. 15, l. 8.

Notwithstanding Kraft's contentions, we agree with the district court that the written description and prosecution history overcome any presumption arising from the doctrine of claim differentiation, and thus approve the district court's construction of claim 2's "protecting back panel" as one that must be relatively stiff. Addressing each of Kraft's contentions in turn, we first note that claim differentiation only creates a presumption that each claim in a patent has a different scope; it is "not a hard and fast rule of construction." *Comark,* 156 F.3d at 1186, 48 USPQ2d at 1005. "[C]laim differentiation can not broaden claims beyond their correct scope." *Multiform Desiccants Inc. v. Medzam, Ltd.,* 133 F.3d 1473, 1480, 45 USPQ2d 1429, 1434 (Fed. Cir.1998). That the patentee chose several words in drafting a particular limitation of one claim, but fewer (though similar) words in drafting the corresponding limitation in another, does not mandate different interpretations of the two limitations, since "defining a state of affairs with multiple terms should help, rather than hinder, understanding." *Bell & Howell Doc. Management Prods. Co. v. Altek Sys.,* 132 F.3d 701, 707, 45 USPQ2d 1033, 1039 (Fed.Cir. 1997). Moreover, that the claims are presumed to differ in scope does not mean that every limitation must be distinguished from its counterpart in another claim, but only that at least one limitation must differ. *See Mantech Envtl. Corp. v. Hudson Envtl. Servs.,* 152 F.3d 1368, 1376, 47 USPQ2d 1732, 1739 (Fed.Cir.1998). Although Kraft argues that the "protecting back panel" need not be relatively rigid, but can be "a label or any structure," it

fails to provide any support for this broad definition or otherwise demonstrate that this is the normal and ordinary meaning.

With respect to the written description, every disclosed embodiment that employs a back panel employs one that is relatively stiff. Kraft does not dispute that the statement that "any of the back panels would be constructed of a relatively stiff material" applies at least to the embodiments disclosed in Figures 10–15. *See* '873 patent, col. 6, l. 25—col. 9, l. 48. The only other embodiments employing a back panel are disclosed in Figures 19–21 and 32, but these, too, describe the back panel as relatively stiff to enable the stand-on-edge feature. *See* '873 patent, col. 10, ll. 16–18 (describing the back panel as a "card"); col. 11, ll. 33–35 (describing the back panel as extending to the edge to provide the stand-up feature). Moreover, although the written description states that "[t]he back panel may take many different forms," the immediately succeeding sentences reveal that such variations relate only to the size or location of the back panel and do not discuss variations in stiffness. *See* '873 patent, col. 3, ll. 48–51 ("For example, if it is not necessary that the back panel serve the function of protecting the bottoms of all compartments, it may cover only a portion of the bottom of the tray."); *see also* '873 patent, figs. 10–15, 19–21 (showing various shapes, sizes, and positions of the back panel). Finally, as we discuss below, the written description reveals that at least one purpose of the "protecting back panel" is to protect the bottom of the tray compartments against indentation and damage, *see* '873 patent, col. 3, l. 50, and the relatively rigid characteristic of the "protecting back panel" promotes such protection.

The prosecution history is similarly illustrative. The purpose of the former "end portion" limitation was to provide, in concert with the lowermost peripheral flange of the food tray, a stand-on-edge feature.

As Kraft admits, the inventors eliminated this "end portion" limitation because it was already claimed by a related patent. Although this amendment broadened the claim to the extent that the food package no longer needed to be capable of standing-on-edge, it did not alter the inherent "relatively stiff" characteristic required of the "protecting back panel." Similarly, the examiner's acknowledgment that the written description "certainly provides a description of this material [of the back panel] as being 'stiff,'" but not non-bendable, reveals that the inventors' subsequent removal of the non-bendable limitation did not change the back panel's relatively stiff characteristic.

## B. Protecting

■ The district court construed the modifier "protecting" in "protecting back panel" as "protecting the food tray compartments from indentation and damage." *Kraft Foods*, slip op. at 8. Although the district court did not interpret "protecting" as also protecting the structural integrity of the food package, it viewed the back panel's immovable adherence to the bottom of more than one tray compartment as serving this additional role. *See id.*

The district court viewed the written description and prosecution history as supporting its interpretation of the "protecting" function. For example, the written description generally notes:

> In the absence of a *protective back panel,* and depending on the particular material used to form the rigid base tray, it may be desirable to *protect the bottoms of the compartments against damage* by thermoforming the lower corners of the respective compartments either flat or indented.

'873 patent, col. 4, ll. 35–39 (emphasis added). Similarly, during the prosecution of the patent application, the inventors noted that some dependent claims of the proposed patent called for the back panel to cover the bottoms of all tray compartments. The inventors observed that such coverage "affords additional protection for those bottoms which are vulnerable to damage."

Although Kraft had argued that "protecting" actually referred to protecting the structural integrity of the food package, the district court viewed claim 1 and the prosecution history as contradicting this interpretation. Claim 1 describes the back panel as "*adhered immovably* to the bottom walls of at least two of said compartments of the tray to *preserve the structural integrity of the package.*" '873 patent, col. 14, ll. 15–16 (emphasis added). Although claim 2 also requires that the back panel be "adhered immovably to said bottom walls of at least two of said compartments," '873 patent, col. 14, ll. 32–33, it does not expressly associate such immovable adherence to preserving the structural integrity of the package. The district court reasoned that the "protecting" function of claim 2's back panel must serve a different purpose to avoid rendering claim 1's structural integrity language superfluous. The district court further emphasized that application claim 41 had always recited a "protecting back panel," and noted that it was the examiner who had suggested that the inventors amend the claim to require that the panel be "adhered immovably to said bottom walls of at least two of said compartments" to preserve the structural integrity of the package.

Kraft disputes the district court's conclusion that the "protecting" function concerns indentation and damage, instead interpreting "protecting" as protecting the food tray's structural integrity. Kraft contends that if, as the district court reasoned, the "adhered immovably" limitation inherently served the purpose of preserving the structural integrity of the food package, then claim 1's express recitation of this purpose would be redundant.

Kraft thus concludes that the district court merely shifted the superfluity from claim 2 to claim 1.

We note that, with respect to back panels, the written description uses the term "protecting" in two different contexts: (1) "protect[ing] the structural integrity of the tray," *see, e.g.*, '873 patent, col. 3, ll. 33–35; and (2) "protect[ing] the bottoms of the compartments against damage," *see, e.g.*, '873 patent, col. 4, ll. 37–38. The district court apparently believed that it had to choose between these two different protecting functions in construing the "protecting" function, and did not consider the possibility that "protecting" included both. Similarly, though Kraft argues zealously that "protecting" must be limited to protecting the structural integrity of the food package, it offers no rational basis for preferring such protection over that against tray damage and indentation. Kraft further fails to present any sound argument clarifying or otherwise qualifying the written description's discussion of the back panel's role in protecting the tray compartment bottoms.

We thus agree with the district court's construction of the word "protecting," as used in the phrase "protecting back panel," to mean protecting both the structural integrity of the food package *and* the tray compartment bottoms against indentation and damage. This construction avoids the superfluity concerns voiced by the district court and Kraft, yet is consistent with the written description's repeated references to both forms of protection.

## II. Infringement

### A. Literal Infringement

■■■■■ The second step of the literal infringement analysis, the application of the properly-construed claim to the accused device, is a question of fact. *See Voice Techs.*, 164 F.3d at 612, 49 USPQ2d

at 1337. A claim is literally infringed when the accused device literally embodies each limitation of the claim. *See Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211, 1217, 36 USPQ2d 1225, 1228 (Fed. Cir.1995), *cert. denied*, 520 U.S. 1115, 117 S.Ct. 1243, 137 L.Ed.2d 326 (1997).

■■■■ On ITC's motion for summary judgment of non-infringement, the district court held that ITC's application of a flexible, pressure-sensitive label to the bottom of more than one tray compartment could not literally infringe limitation (c) of claim 2. Kraft argues that, even if the "protecting back panel" must be relatively rigid, genuine issues of material fact as to the rigidity of ITC's back labels remain, precluding summary judgment. In particular, Kraft cites the testimony of its expert, Dr. Tim Osswald, that ITC's back labels, once applied to ITC's trays, are rigid enough to protect against indentation and damage. ITC responds that, as attested to by its marketing manager, Tammy Mikeska, its labels are thin and pressure-sensitive, are purchased on circular rolls, and must be flexible enough to conform to the shape of the surface to which they are adhered.

In light of our construction of "protecting back panel" as being relatively stiff, we conclude that ITC's products do not literally infringe claim 2 because their back labels do not meet this claim limitation. Kraft's contention that these labels become rigid once they are applied to ITC's tray bottoms misses the point. The written description and prosecution history amply demonstrate that the back panels are relatively rigid not merely *upon* their immovable adherence to the bottom of the tray compartments, but *prior* to their application in order to strengthen the package against indentation and damage through their inherent stiffness as well as their tensile strength. As Ms. Mikeska attested, ITC's polypropylene-laminated paper labels are not relatively rigid, but are fur-

nished on circular rolls and are thin, pressure-sensitive, and flexible. Consequently, we hold that the district court properly granted summary judgment of no literal infringement.

## B. Doctrine of Equivalents

Infringement under the doctrine of equivalents is a question of fact. *See Warner–Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40, 117 S.Ct. 1040, 137 L.Ed.2d 146, 41 USPQ2d 1865, 1875 (1997). Equivalence is shown by evidence that the accused device contains an element that is not "substantially different" from any claim element that is literally lacking, *see id.*, or that the claimed limitation and the accused component "perform[ ] substantially the same function in substantially the same way to achieve substantially the same result," *see Ethicon Endo–Surgery, Inc. v. United States Surgical Corp.*, 149 F.3d 1309, 1321, 47 USPQ2d 1272, 1280 (Fed.Cir.1998).

The district court held that ITC's products could not infringe under the doctrine of equivalents in light of our holding in *Chiuminatta*, 145 F.3d at 1310, 46 USPQ2d at 1757–58. The district court read *Chiuminatta* as precluding infringement under the doctrine of equivalents whenever the accused variation of the patented invention involves pre-existing technology. The district court declared that "[a] flexible, pressure sensitive label [was] not new technology." *Kraft Foods*, slip op. at 16. Because the '873 patent describes the use of a flexible, pressure-sensitive label, but does not claim the use of this label as a "protecting back panel," the district court rejected Kraft's attempt to secure patent protection for what could have been claimed, but was not. The district court further commented that the '873 patent teaches away from the use of a label as a back panel, since the written description states that "it is preferable

that [labels] not bridge gaps between compartments." '873 patent, col. 10, ll. 47–48.

Kraft characterizes the district court's application of *Chiuminatta* to non-means-plus-function claims as directly contrary to our established precedent. Kraft argues that, where as here the asserted claims do not employ the means-plus-function format, infringement under the doctrine of equivalents is not limited to technology arising after the issuance of the patent. *See, e.g., Litton Sys., Inc. v. Honeywell, Inc.*, 140 F.3d 1449, 1464–65, 46 USPQ2d 1321, 1332 (Fed.Cir.1998) (rejecting argument that doctrine of equivalents should be limited to after-arising equivalents, since "known interchangeability is often synonymous with equivalence"). Even assuming that the district court correctly applied *Chiuminatta*, Kraft argues that there is no evidence that ITC's laminated back labels were pre-existing technology when the patent issued. According to Kraft, the patent describes only "conventional, thin, pressure-sensitive labels" made of "paperbase" or "low density polyethylene." '873 patent, col. 13, ll. 3–9. Kraft contends that such labels differ from ITC's labels, which are made of white paper stock coated with a polypropylene laminate.

Kraft further contends that its evidence was adequate to preclude summary judgment, and that the district court improperly resolved genuine issues of material fact against Kraft, the non-movant. In particular, Kraft points to Dr. Osswald's report documenting the ability of ITC's label to strengthen ITC's packages against indentation and buckling. For example, Dr. Osswald's report states. that ITC's back label improves the stiffness of the ITC food package against inward deflection by 35% for a filled four-compartment tray, and by 97% for a filled three-compartment tray. Dr. Osswald's report also asserts that an intact back label improves the stiffness of an ITC four-compartment food

package against indentation (measured at the center of the compartment tray) by 41% compared with a cut back label (i.e., a label applied to the back of the tray compartments, but cut along the gaps between those compartments).

By contrast, ITC interprets the district court's opinion as relying on *Chiuminatta* only for the more narrow proposition that where the allegedly infringing structure was (1) known at the time the patent was issued, (2) disclosed in the patent, *and* (3) distinguished from the claimed structure, the disclosed structure cannot be equivalent to that claimed. ITC cites in support *Dawn Equipment Co. v. Kentucky Farms, Inc.*, 140 F.3d 1009, 46 USPQ2d 1109 (Fed. Cir.1998), and *Spectra Corp. v. Lutz*, 839 F.2d 1579, 5 USPQ2d 1867 (Fed.Cir.1988). In *Dawn Equipment*, the Background of the Invention portion of the patent described problems with certain prior art mechanisms, which included the mechanism alleged to be equivalent to that claimed. We viewed this description to be "damning evidence" that the allegedly equivalent mechanism operated in a substantially different way, and declared that this evidence strongly suggested, if not mandated, judgment in the defendant's favor. *See Dawn Equipment*, 140 F.3d at 1016, 46 USPQ2d at 1114. Similarly, in *Spectra Corp.*, we held that the written description's "clear and uncontroverted" statements that the allegedly equivalent structure served a function entirely opposite to that of the recited structure, coupled with the patent holder's admission to the same effect, precluded the patent holder from asserting the doctrine of equivalents. *See Spectra Corp.*, 839 F.2d at 1582, 5 USPQ2d at 1869.

ITC also disputes that the district court resolved any genuine issues of material fact in its favor. Among other things, ITC claims that Dr. Osswald's tests were non-standard and only compared the protection offered by ITC's labels when adhered to the bottom of an ITC food package with a package with nothing at all on its bottom. ITC maintains that Kraft did not compare the claimed protecting back panels with ITC's labels.

We agree with Kraft that the district court incorrectly applied our holding in *Chiuminatta* and consequently improperly granted summary judgment of non-infringement under the doctrine of equivalents. In *Chiuminatta*, we reversed the district court's grant of summary judgment of literal infringement of the asserted means-plus-function claim because the accused wheel structure was not equivalent to the skid plate disclosed in the written description for performing the claimed function. *See Chiuminatta*, 145 F.3d at 1310, 46 USPQ2d at 1757. We further held that, because the accused wheel structure was known at the time the patent issued, our determination of non-equivalence under 35 U.S.C. § 112 precluded a contrary finding under the doctrine of equivalents. *See id.* at 1310–11, 46 USPQ2d at 1757–58. Our rationale for the latter holding was that, given the close relationship between equivalence under 35 U.S.C. § 112, ¶ 6 and that under the doctrine of equivalents, litigating the question of infringement under the doctrine of equivalents for pre-existing technology after holding that such technology did not literally infringe as an "equivalent" under § 112, ¶ 6 would give the patentee "two bites at the apple." *Id.* at 1311, 46 USPQ2d at 1758.

As Kraft correctly notes, however, *Chiuminatta*'s preclusion of a finding of infringement under the doctrine of equivalents for pre-existing technology after an adverse holding of no literal infringement for the same technology applies only to means-plus-function claim limitations. Where the patentee does not use the means-plus-function format, the resolution of infringement under the doctrine of

equivalents would not allow the patentee "two bites at the apple," since the resolution of the literal infringement question would not address the issue of equivalence in a claim drawn to structure rather than to a means-plus-function. Thus, for a claim limitation not drafted in means-plus-function language, the mere fact that the asserted equivalent structure was pre-existing technology does not foreclose a finding of infringement under the doctrine of equivalents. Here, neither party argued that "protecting back panel" was a means-plus-function limitation, and the district court did not construe the term as such.

We further reject ITC's attempt to salvage the district court's reliance on *Chiuminatta* by arguing that *Chiuminatta* also precludes equivalence under the doctrine of equivalents where the written description explicitly teaches away from and does not claim the allegedly equivalent structure. First, the district court unequivocally held that "*Chiuminatta* is dispositive of plaintiff's doctrine of equivalents argument." *Kraft Foods,* slip op. at 16. The district court's discussion reveals its belief that this case fell squarely within *Chiuminatta*'s holding, and does not illustrate a mere attempt to analogize the facts to *Chiuminatta* or draw support for a "teaching away" argument. Second, even assuming that the district court was attempting to use *Chiuminatta* to support the theory that an unclaimed, but disclosed structure cannot be equivalent where the written description expressly teaches away from such equivalence, we note that the written description in this case does not clearly teach away from the use of labels as back panels. The actual portion of the written description upon which the district court relied states:

> However, in the absence of a rigid back panel, i.e., in the embodiments of FIGS. 16 through 18 as well as FIGS. 22 and 23, wherein a stand-up feature is provided in the absence of a rigid back panel,

it may be desirable to attach a conventional thin pressure sensitive label to the bottoms of the compartments.... Although these labels can be arranged *in any suitable way,* it is *preferable* that they not bridge gaps between compartments.

'873 patent, col. 10, ll. 47–49 (emphasis added). These statements are not comparable to the "damning evidence" in *Dawn Equipment* or the "clear and uncontroverted statements" in *Spectra Corp.,* since they merely indicate the patentees' preference that the labels not bridge gaps and acknowledge that the labels can be used in "any suitable way."

On summary judgment, the district court was required to draw reasonable inferences in favor of Kraft, the non-movant. Dr. Osswald's test results reveal that ITC's back labels increase the strength of ITC's packages against indentation and damage. Although ITC contends that Dr. Osswald did not compare ITC's back labels with the claimed protecting back panels, Dr. Osswald's affidavit establishes that he did so in documenting the ability of ITC's back labels to protect the food package. Dr. Osswald's report thus creates a genuine issue of material fact as to whether ITC's back labels (1) serve substantially the same function of protecting the bottom of the tray compartments as the "protecting back panel," (2) by helping the package resist inward and outward deflection, indentation, and other damage in substantially the same way, (3) to achieve substantially the same protective result. Given this evidence, and in view of district court's misapplication of *Chiuminatta,* we conclude that the district court should have denied summary judgment of non-infringement under the doctrine of equivalents. We thus remand this case to the district court for a trial on the issue of infringement under the doctrine of equivalents or for other proceedings consistent with this opinion.

## CONCLUSION

The district court properly required that claim 2's "protecting back panel" be relatively rigid, and thus appropriately granted summary judgment of no literal infringement. The district court misapplied our holding in *Chiuminatta* to a claim not employing the means-plus-function format, however, and thus improperly granted summary judgment of non-infringement under the doctrine of equivalents. Accordingly, we

*AFFIRM–IN–PART, REVERSE–IN–PART,* and *REMAND.*

## COSTS

Each party shall pay its own costs.