Leoutsakos v. Coll's Hospital Pharm. CV-02-434-M 07/08/03
UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


Thomas Leoutsakos,
      Plaintiff

      v.                                    Civil No. 02-434-M
                                            Opinion No. 2003 DNH 109
Coll's Hospital Pharmacy, Inc.
and HealthCraft Products, Inc.,
      Defendants


**O R D E R**


Thomas Leoutsakos holds United States patent 5,195,200 (the "'200 patent"), covering a "manual support apparatus attachable to a bedframe." He claims that Coll's Hospital Pharmacy, Inc., and HealthCraft Products, Inc., ("defendants") have infringed that patent. Before the court are defendants' motion for summary judgment (document no. 15), to which plaintiff has filed no objection, and plaintiff's motion for summary judgment (document no. 16).[1] Defendants' motion for summary judgment is granted and plaintiff's motion for summary judgment is denied.

------

[1] Plaintiff has captioned his motion as one for partial summary judgment, explaining that after resolution of his patent claim, the issue of common law trademark infringement will still remain. However, plaintiff's complaint contains only one count, asserting patent infringement. Therefore, he has no common law trademark infringement claim.

## Summary Judgment Standard

Summary judgment is appropriate when the record reveals "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). "To determine whether these criteria have been met, a court must pierce the boilerplate of the pleadings and carefully review the parties' submissions to ascertain whether they reveal a trialworthy issue as to any material fact." Perez v. Volvo Car Corp., 247 F.3d 303, 310 (1st Cir. 2001) (citing Grant's Dairy-Me., LLC v. Comm'r of Me. Dep't of Agric., Food & Rural Res., 232 F.3d 8, 14 (1st Cir. 2000)). When ruling on a party's motion for summary judgment, the court must "scrutinize the summary judgment record 'in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor.'" Navarro v. Pfizer Corp., 261 F.3d 90, 94 (1st Cir. 1995) (quoting Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990)).

## Background

The '200 patent was issued on March 23, 1993. It discloses "[a] manual support apparatus attachable to a bedframe for

2

providing a secure and stable method for a user/patient to transfer into and out of bed independently, and enhance in-bed mobility." '200 patent (Def.'s Mot. Summ. J., Ex. A), abstract, ll. 1-4.

The '200 patent has two independent claims (claims one and ten) and eight dependent claims. Claim one reads as follows:

> A manual support apparatus attachable to a bedframe comprising:
> a planar plate member having outside edges;
> two tubular members having internal bores for slidable receipt of a support tube;
> a first means to attach said tubular members to said plate member; and
> a second means to attach said plate member to said bedframe.

'200 patent, col. 6, ll. 12-20. Claim ten reads as follows:

> A manual support apparatus attachable to a bedframe comprising:
> a planar plate member having outside edges;
> a support tube having two legs;
> two tubular members having internal bores for slidable receipt of said support tube;
> a first means to attach said tubular members to said plate member; and
> a second means to attach said plate member to said bedframe.

3

'200 patent, col. 6, ll. 48-57. The device disclosed in the '200 patent is a fixed bed rail that is supported in place along the side of a bed by means of a planar plate member that is bolted or clipped, below both the mattress and box spring, to the bedframe side rail on the side of the bed on which the device is installed.

Based upon their understanding of the '200 patent (O'Brien Aff. ¶¶ 5-8), defendants designed and now market their own manual support apparatus called the "Smart-Rail" (id. ¶ 4). The Smart-Rail is a movable bed rail that may be locked in position parallel to the side of a bed, but which may also be unlocked and swung outward, much like a gate, so that it stands perpendicular to the side of the bed. (O'Brien Aff. ¶ 4; Def.'s Mot. Summ. J., Exs. B, C, & D.) Unlike the patented device, which has a planar plate member attached to the underside of the bedframe, the Smart-Rail has a tubular support frame that slides between the box spring and the mattress and that may be lashed, with cloth safety straps, to the bedframe side rail on the side of the bed opposite the side on which the device is installed. (O'Brien Aff. ¶ 7.)

4

## Discussion

Plaintiff moves for summary judgment, arguing that the Smart-Rail literally infringes the '200 patent because it has: (1) a means for attachment to the bedframe; (2) a planar plate member; (3) two tubular members; and (4) a support tube that slides into the tubular members. Defendants counter that the Smart-Rail does not literally infringe because it: (1) does not attach to the bedframe; (2) has a tubular support frame rather than a planar plate member; and (3) has only one tubular member, rather than two. Defendants further argue that the Smart-Rail does not infringe under the doctrine of equivalents because: (1) cloth safety straps are not the equivalent of bolts or clips; (2) one tubular member is not the equivalent of two tubular members; and (3) a tubular support frame is not the equivalent of a planar plate member. Because the Smart-Rail has neither a "planar plate member" nor its equivalent, the accused device does not infringe the '200 patent.

Under the United States Patent Act, "[e]xcept as otherwise provided . . . whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States

5

or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a).

> An infringement analysis requires two steps: construction of the claims, to determine their scope and meaning, and comparison of the properly construed claims to the allegedly infringing device or method. Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1454 (Fed. Cir. 1998) (en banc). Claim construction . . . is a matter of law . . . . Lockheed Martin Corp. v. Space Sys./Loral, Inc., 249 F.3d 1314, 1323 (Fed. Cir. 2001). The comparison of claims to the accused device or method, and the corresponding determination of infringement, whether literal or under the doctrine of equivalents, is a question of fact. Tanabe Seiyaku Co. v. United State Int'l Trade Comm'n, 109 F.3d 726, 731 (Fed. Cir. 1997).

J & M Corp. v . Harley-Davidson, Inc., 269 F.3d 1360, 1366 (Fed. Cir. 2001) (parallel citations omitted).

I.  Claim Construction

"It is well-settled that, in interpreting an asserted claim, the court should look first to the intrinsic evidence of record, i.e., the patent itself, including the claims, the specification and, if in evidence, the prosecution history." Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996) (citing Markman v. Westview Instruments, Inc., 52 F.3d 967, 979

(Fed. Cir. 1995) (en banc), aff'd 517 U.S. 370 (1996)).  When examining the intrinsic evidence, the court should first "look to the words of the claims themselves, both asserted and nonasserted, to define the scope of the patented invention." Vitronics, 90 F.3d at 1582 (citing Bell Communications Research, Inc. v. Vitalink Communications Corp., 55 F.3d 615, 620 (Fed. Cir. 1995)).  In doing so, the court must bear in mind the "heavy presumption in favor of the ordinary meaning of claim language." Kraft Foods, Inc. v. Int'l Trading Co., 203 F.3d 1362, 1366 (Fed. Cir. 2000) (quoting Johnson Worldwide Assocs., Inc. v. Zebco Corp., 175 F.3d 985, 989 (Fed. Cir. 1999)).  After considering the ordinary meaning of the claim language, the court should "review the specification to determine whether the inventor has used any terms in a manner inconsistent with their ordinary meaning," Vitronics, 90 F.3d at 1582, but "any special definition given to a word must be clearly defined in the specification," Kraft Foods, 203 F.3d at 1266 (quoting Markman, 52 F.3d at 980).

Claim construction often entails a Markman hearing, the purpose of which is to provide the court with guidance on the

7

interpretation of complex technical information.  But where, as here, neither party has requested such a hearing, and the subject matter of the patent is not highly technical, the patent claims may be construed without benefit of a <u>Markman</u> hearing.

The key claim term is "planar plate member."  As used in the '200 patent, a planar plate member is a planar member that is "a perfectly flat sheet of a material of uniform thickness throughout."  WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE 1734.  All the drawings in the '200 patent depict a flat plate member of uniform thickness that is unpierced, with the exception of holes for attachment hardware, and there is nothing in the specification that redefines the term "plate" to include anything other than a sheet of uniform thickness.  <u>See</u> <u>Kraft Foods</u>, 203 F.3d at 1266 (citation omitted).

II.  <u>Literal Infringement</u>

The Smart-Rail does not literally infringe the '200 patent.  "A claim is literally infringed when the accused device literally embodies each limitation of the claim."  <u>Kraft Foods</u>, 203 F.3d at 1370 (citing <u>Pall Corp. v. Micron Separations, Inc.</u>, 66 F.3d

8

1211, 1217 (Fed. Cir. 1995)). The Smart-Rail does not literally infringe because the Smart-Rail does not embody the limitation of a planar plate member as disclosed in claims one and ten of the '200 patent. If plaintiff had claimed a "planar member" rather than a "planar plate member," then perhaps an argument could be made that the tubular support frame in the Smart-Rail embodies the claim limitation. But because the '200 patent claims a planar member that is a plate, and because the Smart-Rail's tubular support frame is not a sheet of uniform thickness but is, instead, a largely open frame made from cylindrical tubes, the Smart-Rail does not literally infringe the '200 patent.[2]

Since literal infringement can be determined based upon the "planar plate member" limitation, there is no cause to construe the "attachable to a bedframe" or "two tubular members"

---

[2] Plaintiff's Exhibits 1 and 2, in which he labels elements of the Smart-Rail using terms from the '200 patent, are not persuasive. The Smart-Rail element plaintiff calls a "planar plate member" most closely corresponds to the brace (element 24) in the '200 patent, while the element that most closely corresponds to the planar plate member in the '200 patent, the tubular support frame, is completely ignored. Moreover, contrary to plaintiff's assertion (Leoutsakos Aff. ¶ 6), member 28 does not attach the putative planar plate to the bedframe; it connects the unlabeled tubular support frame to the bedframe.

9

limitations of the '200 patent, nor is there a need to determine whether the Smart-Rail embodies those limitations.

III. <u>Infringement Under the Doctrine of Equivalents</u>

The Smart-Rail also does not infringe the '200 patent under the doctrine of equivalents. Infringement by an equivalent occurs when "the accused product or process contain[s] elements identical or equivalent to each claimed element of the patented invention." <u>Warner-Jenkinson Co. v. Hilton-Davis Chem. Co.</u>, 520 U.S. 17, 40 (1997). "The determination of equivalence should be applied as an objective inquiry on an element-by-element basis." <u>Id.</u>

> Equivalence is shown by evidence that the accused device contains an element that is not "substantially different" from any claim element that is literally lacking [in the accused device], <u>see</u> [<u>Warner-Jenkinson</u>, 520 U.S. at 40], or that the claimed limitation and the accused component "perform[] substantially the same function in substantially the same way to achieve substantially the same result," <u>see</u> <u>Ethicon Endo-Surgery, Inc. v. United States Surgical Corp.</u>, 149 F.3d 1309, 1321 (Fed. Cir. 1998).

<u>Kraft Foods</u>, 203 F.3d at 1372 (parallel citations omitted).

10

"Determination of infringement, whether literal or under the doctrine of equivalents, is a question of fact." Hilgraeve Corp. v. Symantec Corp., 265 F.3d 1336, 1341 (Fed. Cir. 2001) (citing Bai v. L & L Wings, Inc., 160 F.3d 1350, 1353 (Fed. Cir. 1998)). However, "summary judgment of non-infringement can . . . be granted if, after viewing the alleged facts in the light most favorable to the non-movant, there is no genuine issue whether the accused device is encompassed by the claims." Hilgraeve, 265 F.3d at 1341 (quoting Pitney Bowes, Inc. v. Hewlett-Packard Co., 182 F.3d 1298, 1304 (Fed. Cir. 1999)); see also Warner-Jenkinson, 520 U.S. at 39 n.8 ("Where the evidence is such that no reasonable jury could determine two elements to be equivalent, district courts are obligated to grant partial or complete summary judgment.") (citations omitted).

No reasonable jury could determine that the Smart-Rail's tubular support frame is the equivalent of the patented device's planar plate member, because the tubular support frame does not meet the "function-way-result" test. In the '200 patent, the planar plate member is fixed to the underside of the bedframe with bolts or clips, and is connected to the side of the bed on

11

which the device is installed.  In contrast, the Smart-Rail's tubular support frame fits between the mattress and the box spring, and is linked to the bed frame by a cloth safety strap, on the side of the bed opposite the side on which the Smart-Rail is installed.  The components perform in different ways, as do the means of connection.  Moreover, the planar plate member and the tubular support frame perform different functions.  The planar plate member connects the support tube to the bedframe in a way that allows the bedframe to function as the sole weight-bearing element for the support tube/handle.  Indeed, in several embodiments, no part of the apparatus touches the floor.  In contrast, the Smart-Rail employs two legs that rest on the floor.  Those legs serve as the primary weight-bearing element.  Similarly, the bolts or clips that connect the planar plate member to the bed frame provide a fixed form of weight-bearing attachment while the Smart-Rail's cloth safety straps do not; they perform a secondary safety function.

If the Smart-Rail's tubular support frame were bolted or clipped to the underside of the bedframe, on the side of the bed on which it was installed, then, perhaps, an argument might be

12

made that the tubular support frame constitutes an infringing equivalent of the planar plate member. But because the planar plate member (and its means of attachment) and the Smart-Rail's tubular support frame (and its cloth safety straps) do not "perform[] substantially the same function in substantially the same way to achieve substantially the same result," the Smart-Rail does not infringe the '200 patent under the doctrine of equivalents. Kraft Foods, 203 F.3d at 1372 (citations omitted).

## Conclusion

For the reasons given, plaintiff's motion for summary judgment (document no. 16) is denied and defendant's motion for summary judgment (document no. 15) is granted. The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

July 8, 2003

cc: Thomas Leoutsakos, pro se
    Ralph F. Holmes, Esq.