SPHERIX INCORPORATED, Plaintiff,

v.

VERIZON SERVICES CORP.; Verizon South Inc.; Verizon Virginia LLC; Verizon Communications Inc.; Verizon Federal Inc.; Verizon Business Network Services Inc.; MCI Communications Services, Inc., Defendants.

Case No. 1:14–cv–00721–GBL–TCB.

United States District Court,
E.D. Virginia,
Alexandria Division.

Signed July 1, 2015.

Erik Craig Kane, Kenyon & Kenyon, Washington, DC, James W. Hundley, Kristin Anne Martin Zech, Nicholas Valdis Cumings, Brigliahundley PC, Tysons Corner, VA, for Plaintiff.

Charles Brandon Rash, Finnegan Henderson Farabow Garrett & Dunner LLP, Washington, DC, for Defendant.

### MEMORANDUM OPINION AND ORDER

GERALD BRUCE LEE, District Judge.

This matter is before the Court on Plaintiff Spherix's Corrected Combined Motion and Memorandum in Support of its Motion for Partial Summary Judgment and Proposed Claim Constructions (Doc. 231) and Defendants Verizon's Motion for Summary Judgment, Motion for Summary Adjudication, and Entry of Proposed Claim Constructions (Doc. 204). This case concerns Defendants Verizon Services Corp., Verizon South Inc., Verizon Virginia LLC, Verizon Communications Inc., Verizon Federal Inc., Verizon Business Network Services Inc., and MCI Communications Services, Inc. (collectively, "Verizon")'s alleged infringement of U.S. Patent Number 6,980,564 ("the '564 patent") owned by Plaintiff Spherix Incorporated ("Spherix"). The patent relates generally to "data transmission networks and more particularly, the invention relates to data communication equipment [ ("DCE") ] for use by data termination equipment." U.S. Patent No. 6,980,564 col. 1, 11. 15–18 (filed June 19, 2001). The invention was intended to reduce duplication and inefficiency in the network services industry by eliminating the need to produce a variety of different DCE's for each network/medium type. *Id.* col. 1–2, ll. 1–10, 66–67.

There are two issues before the Court. The first issue is whether the Court should grant Defendants' Motion for summary judgment on invalidity, non-infringement, or anticipation grounds. The second issue is whether the Court should grant Plaintiff's motion for partial summary judgment where Plaintiff asserts that Verizon's MoCA capable ONTs and other accused products directly infringe the '564 patent.

The Court GRANTS Defendants' Motion for Summary Judgment because independent Claim 1 is invalid for indefiniteness, and accordingly, the asserted dependent claims are also invalid. The Court also GRANTS Defendants' Motion for Summary Judgment on non-infringement because Verizon's accused products, in light of the Court's Claim Construction/*Markman* Order, do not directly infringe the '564 patent. The Court does not find reason to reach Defendants' anticipation argument or laches, licensing, or failure-to-mark defenses. In view of the Court's findings on indefiniteness and non-infringement, the Court DENIES Plaintiff's Motion for Partial Summary Judgment of infringement.

## I. BACKGROUND

The following is taken from the Parties' undisputed facts (Docs. 205 and 218). In 1995, Nortel Networks Corp. ("Nortel") and Antec Corp. ("Antec") formed a joint venture named ARRIS. ARRIS's flagship product was a Network Interface Unit ("NIU") for cable networks. In 2000, Oscar Rodriguez, a Nortel Employee assigned to work at ARRIS, conceived of a modular network-specific NIU that could communicate with a modular service-specific service delivery unit ("SDU") over a common interface that used a signal format understood by both the NIU and SDU. Later that year, David Berman, another Nortel employee assigned to ARRIS,

drafted an invention disclosure statement based on Mr. Rodriguez's concept. On June 19, 2001, Nortel filed a patent application based on the invention disclosure. The application eventually issued as U.S. Patent No. 6,980,564. The inventors of the '564 patent were Mr. Rodriguez, Mr. Berman, and Jim Lakin, an ARRIS employee. In the latter part of 2000, Nortel sold its interest in the ARRIS joint venture to Antec, but retained a significant interest in ARRIS going forward. In 2009, Nortel filed for bankruptcy which led ultimately to Spherix's acquisition of the '564 patent.

There is one independent claim at issue, namely Claim 1 of the '564 patent, and seven dependent claims, Claims 2–3 and 5–9. Claim 1 provides for:

1. A network interface unit comprising: an interface for connecting a service delivery unit to a given medium, wherein the service delivery unit is any one type in a family of different types of service delivery units, each type of service delivery unit in the family providing a network service that is different than the network service provided by the other types of service delivery units in the family, the service delivery unit processing messages received in a first format; a medium module configured to process data for transmission between the given medium and the service delivery unit, the medium module transmitting messages toward the service delivery unit in a second format; and

an interface module configured to receive messages transmitted between the medium module and the service delivery unit, the interface module being configured to translate messages from the second format to the first format.

'564 Patent col. 9, ll. 6–25. Plaintiff and Defendants have each filed their respective Motions for Summary Judgment (Docs. 205 and 218), their respective oppositions

to those motions (Docs. 243 and 250), and their respective replies in further support of those motions (Docs. 312 and 318). Plaintiff's and Defendants' motions are now properly before the Court.

## II. DISCUSSION

Pursuant to Federal Rule of Civil Procedure 56, the Court must grant summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

In reviewing a motion for summary judgment, the Court views the facts in the light most favorable to the nonmoving party. *Boitnott v. Corning, Inc.*, 669 F.3d 172, 175 (4th Cir.2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir.2003) (citations omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir.2008) (quoting *Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505).

A "material fact" is a fact that might affect the outcome of a party's case. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). Whether a fact is considered "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *Hooven–Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir.2001).

A "genuine" issue concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. *Resource Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631, 635 (4th Cir.2005) (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505). Rule 56(e) requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

■ Pursuant to 35 U.S.C. § 112 ¶ 2, "[t]he [patent] specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." "A lack of definiteness renders invalid 'the patent or any claim in suit.'" *Nautilus, Inc. v. Biosig Instruments, Inc.*, —— U.S. ——, 134 S.Ct. 2120, 2125, 189 L.Ed.2d 37 (2014)(citing 35 U.S.C. § 282, ¶ 2(3)). A claim fails to satisfy this statutory requirement and is thus invalid for indefiniteness if its language, when read in light of the specification and the prosecution history, "fail[s] to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Id.* at 2124 (emphasis added). Although absolute or mathematical precision is not required, it is not enough, as previous cases may have suggested, to identify "*some standard* for measuring the scope of the phrase." *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1351 (Fed.

Cir.2005) (emphasis added); *Nautilus,* 134 S.Ct. at 2124. Post–*Nautilus,* § 112 ¶ 2 is interpreted to require that a patent's claims inform those skilled in the art about the scope of the invention with *reasonable certainty. Nautilus,* 134 S.Ct. at 2124 (emphasis added).

## III. ANALYSIS

Defendants move for summary judgment on the following grounds: (1) that the claims in the '564 are invalid as indefinite; (2) that Defendants have not infringed the '564 patent; (3) that the claims of the '564 patent are invalid as anticipated; as well as (4) summary adjudication of its laches, licensing, and failure-to-mark defenses. Plaintiff asks for partial summary judgment on the issue of infringement.

### A. Invalidity for Indefiniteness

■ Defendants asserted that the term "an interface for connecting a service delivery unit to a given medium" is indefinite and thus Claim 1 should be rendered invalid. Simultaneous with this Order, the Court issued a Claim Construction Order, in which it agreed that the term was indefinite and thus Claim 1 was invalid. Accordingly, because Claim 1, the only independent claim asserted, is invalid for indefiniteness, so too are dependent claim 2–9, which encompass all other asserted claims. Summary judgment as to Defendant is therefore warranted, because there is no genuine issue of material fact as to the validity of Claim 1. For completeness, the Court repeats some of the discussion from its Claim Construction Order here.

Claim 1 describes the invention, a network interface unit, as comprising three elements: (1) "an interface for connecting a service delivery unit to a given medium," (2) "a medium module," and (3) "an interface module." Verizon asserts that as originally claimed, the invention only had two elements, a medium module and interface module, however, during prosecution, applicants converted a general description of the invention—"an interface for connecting"—into a specification of one component of the invention. In other words, Verizon argues that in amending Claim 1 the applicants introduced a second, indeterminate "interface" limitation which now renders the claim indefinite.

Plaintiff contends "an interface for connecting a service delivery unit to a given medium" means "an element providing a data connection between a service delivery unit and a given medium." In opposition to Verizon's indefiniteness argument, Spherix argues that the issue can be resolved "entirely by the language of Claim 1 itself, the specification, and most importantly, by the prosecution history." (Doc. 218, at 18). Specifically, Spherix notes that prior to the current claim language, the original Claim 1 had a lengthy preamble that read:

1. A network interface unit for connecting a service delivery unit to a given medium, the service delivery unit being any one type in a family of different types of service delivery units, each type of service delivery unit in the family providing a network service that is different than the network service provided by the other types of service delivery units in the family, the service delivery unit processing messages received in a first format, the network interface unit comprising:

a medium module configured to process data for transmission between the given medium and the service delivery unit, the medium module transmitting messages toward the service delivery unit in a second format; and

an interface module configured to receive messages transmitted between the medium module and the service delivery

unit, the interface module being configured to translate messages from the second format to the first format.

In response to a rejection from the patent examiner, applicants revised the language, moving portions from the preamble into the claims, resulting in the current Claim 1 language:

1. A network interface unit *comprising:*

*an interface* for connecting a service delivery unit to a given medium, *wherein* the service delivery unit *is* ~~being~~ any one type in a family of different types of service delivery units, each type of service delivery unit in the family providing a network service that is different than the network service provided by the other types of service delivery units in the family, the service delivery unit processing messages received in a first format; ~~the network interface unit comprising~~:

(Doc. 218, at 19.) Spherix argues that "a person skilled in the art reading the prosecution history would harbor no uncertainty about the term 'interface for connecting a service delivery unit to a given medium'— it is a statement regarding the functionality of the network interface unit, as it was in Claim 1 as originally presented during prosecution." (*Id.*) The Court disagrees.

Nothing in the specification explains "interface for connecting." Spherix's argument that the "interface for connecting" simply describes the functionality of the network interface unit as a whole is unpersuasive. As Spherix acknowledges, the applicants amended the claims to limit the scope in order to overcome a prior art objection from the patent examiner. In so doing, the applicants converted non-limiting preamble language into a new structural claim limitation. Accordingly, in amended Claim 1, the applicants claim a "network interface unit," comprising three, instead of two, components: (1) "an interface for connecting a service delivery unit to a given medium," (2) "a medium module," and (3) "an interface module." Consequently, because the Court finds that nothing in the specification explains an "interface for connecting" or distinguishes it from the third element, an "interface module," then the term "an interface for connecting a service delivery unit to a give medium" is indefinite and thus Claim 1 is invalid, as a person of ordinary skill would be unable to determine the scope of the invention with reasonable certainty. *Nautilus*, 134 S.Ct. at 2124.

Accordingly, the Court grants Defendants motion for summary judgment because the asserted claims are invalid as indefinite.

### B. Infringement/Non-Infringement

Even were the Court to find Claim 1 valid, summary judgment in favor of Defendants would still be warranted because the Court finds that Verizon's accused products do not infringe the '564 patent. Plaintiff asserts that the Court should grant Summary Judgment in its favor on the issue of infringement because Defendants Verizon's MoCA-enabled optical network terminals ("ONTs") infringe Claims 1–3 and 5–9 of the '564 patent. Specifically, Spherix argues that Verizon's Mo–CA enabled ONTs are network interface units, that Verizon's Broad Home Routers ("BHRs") and Set–Top Boxes ("STBs") are service delivery units, and thus Verizon literally infringes independent Claim 1 and dependent Claims 2, 3, and 5–9.

In opposition, Defendants Verizon argues that it is entitled to a finding of non-infringement because: (1) the ONTs used in FiOS services are not "network interface units" as Spherix has construed the term, (2) the BHR and STB used in FiOS services are not "service delivery units" as

Spherix has construed the term, (3) messages are not "transmit[ed] towards the service delivery unit in a second format" by the accused products according to Spherix's own arguments, (4) the STB in the FiOS system does not "process data in the first format," (5) the BHR and STB do not constitute a "family of different types of service delivery units," and finally (6) that the BHR and STB do not necessarily process data in the same MoCA Format. (Doc. 270.)

 Under 35 U.S.C. § 271(a), "[w]hoever without authorization makes, uses, offers to sell, or sells any patent invention, within the United States or imports into the United States any patented invention during the term of the patent therefore [directly] infringes the patent." *Cross Medical Products, Inc. v. Medtronic Sofamor Danek, Inc.,* 424 F.3d 1293, 1310 (Fed.Cir.2005) (internal quotations omitted). When conducting an infringement analysis, after properly construing the claims, the Court compares the construed claims "to the allegedly infringing device to determine whether all of the claim limitations are present[.]" *Innovention Toys, LLC v. MGA Entm't, Inc.,* 637 F.3d 1314, 1318 (Fed.Cir.2011). "In order to prove direct infringement, a patentee must either point to specific instances of direct infringement or show that the accused device necessarily infringes the patent in suit." *ACCO Brands, Inc. v. ABA Locks Mfr. Co., Ltd.,* 501 F.3d 1307, 1313 (Fed. Cir.2007). "[S]ummary judgment of noninfringement can only be granted if, after viewing the alleged facts in the light most favorable to the non-movant, there is no genuine issue whether the accused device is encompassed by the claims." *Hilgraeve Corp. v. Symantec Corp.,* 265 F.3d 1336, 1341 (Fed.Cir.2001) (internal quotation marks omitted).

Application of the above principles as well as those set out in the Court's Claim Construction/*Markman* Order compels the conclusion that Verizon is entitled to judgment as a matter of law because Spherix has failed to show that Verizon's MoCA capable ONTs infringe Claims 1–3 or 5–9 of the '564 patent as herein construed, while Verizon has successfully shown that the accused products do not infringe the '564 patent. Accordingly, considering the Court's Claim Construction/*Markman* Order, there is no genuine issue as to whether the accused devices are encompassed by the claims—they are not.

### 1. Verizon's MoCA ONTs are not Network Interface Units

Spherix asserts that Verizon's MoCA enabled ONTs meet each limitation of its proposed construction for "network interface unit." Specifically, Spherix contends that Verizon's MoCA ONTs are functionally independent customer premises modules that are separate from the devices that provide network services with which they operate (MoCA BHRs and STBs), and that they receive data from and transmit data to the fiber optic medium of Verizon's FiOS fiber optic network. Spherix further explains that Verizon's MoCA ONTs are functionally independent, in that there is a separation of functions between the NIU and the SDU that permits different types of SDUs that provide different network services to be coupled to a common NIU to provide "complete DCE functionality." Spherix also maintains that even under Verizon's proposed construction, which the Court adopted, Verizon's MoCA ONTs are NIUs.

In opposition Verizon argues that its ONTs are not "modules," or rather that the accused ONTs connect to only a single network medium and cannot be interchanged with any other network interface

unit that connects to a different network medium. Further, Verizon asserts that its ONTs are not functionally independent, because a single SDU, for instance a BHR or STB, is unable to cooperate with many different types of NIUs, they only cooperate with ONTs that connect to a fiber-optic network.

The Court construed the term "network interface unit" to mean a "device that provided a direct connection to a network medium for providing one or more network services." Here, Verizon's MoCA enabled ONTs are not network interface unites. Assuming arguendo however, that the Court adopted Spherix's narrowed construction of network interface unit, Verizon's MoCA enabled ONTs still fall short of being an NIU, because they are neither modules nor functionally independent.

## 2. Verizon's BHRs and STBs are not Service Delivery Units

Spherix contends that Verizon's BHRs and STBs are service delivery units because they are functionally independent customer premises modules that are separate from the ONTs with which they interact. Spherix further argues that the "BHR communicates with a connected PC (a network device) that the user interacts with to receive internet service (a network service)." (Doc. 218, at 29–30.)

Verizon counters by arguing that its BHRs and STBs are neither modules nor functionally independent within the meaning of the '564 patent. Verizon asserts that its BHRs and STBs, cannot be mixed and matched to cooperate with a network interface unit to act as data communications equipment. By way of example, Verizon notes that replacing a BHR with an STB would result in no service at all being delivered, "and certainly not the enhance video service that Spherix identifies as the relevant network service for its infringe-ment contentions. (Doc. 270, at 29.) Additionally, Verizon contends that its STB does "not provide video services through direct interaction with the ONT, but rather requires the additional involvement of an entirely separate device, the BHR." (Id. at 29–30.)

The Court found the term "service delivery unit" to mean "a customer premises device that connects to a network interface unit for providing a network service." Here, neither the STB nor the BHR are service delivery units because the ONT is not an NIU and thus the STB and BHR are not customer premises devices that connect to an NIU. Further, even were the Court to adopt Spherix's construction—"a functionally independent customer premises module that communicates with a separate network device with which the end user interact to receive a network service"—Verizon's BHRs and STBs still cannot be considered service delivery units, because both are required components for delivery of enhance video services, and thus could not alone provide the network service as necessitated by Spherix's proposed construction.

## 3. Verizon's MoCA ONTs do not Literally Meet All of the Limitations of Independent Claim 1.

Spherix claims that under either party's proposed construction every limitation of independent Claim 1 is met by Verizon's MoCA capable ONTs. Specifically, Spherix asserts that Verizon's ONTs are an "interface for connecting a service delivery unit to a given medium," and that Verizon's STBs and BHRs are each one type in a family of different types of SDUs and that they provide a different type of network service than other types in the family and process data in a first format. Further, Spherix contends that the circuitry of Verizon's MoCA ONTs are configured to process "data for transmission between the

given medium and the service delivery unit," or between Verizon's fiber optic network and its BHRs and STBs. Finally, Spherix argues that the "MoCA functional unit in Verizon's MoCA capable ONTs is the interface module, e.g., MoCA adapter, daughter card or chip, that receives Ethernet frames formatted data from the medium module and translates the data from Ethernet format, the 'second format,' into the MoCA format, the first format.' " (Doc. 218, at 35.)

In opposition Verizon maintains that it cannot literally meet all the limitations of Claim 1, because Claim 1 in invalid for indefiniteness. Assuming Spherix's construction of each of the terms in Claim 1, however, Verizon argues that messages are not transmitted toward a service delivery unit, Verizon's BHRs and STBs—according to Spherix, in a second format by its ONTs. Instead, Verizon asserts "all signals leaving the ONT go to *both* the BHR and STB, which are separate SDUs.... Thus, internet data goes to the STB, which is not an SDU for providing internet service; enhanced video data, meanwhile, goes to the BHR, which, under Spherix's contention, ... is not the SDU that provide video services." (Doc. 270, at 31.) In other words, there is not *one* second format transmitted between the medium module and the service delivery unit.

Accordingly, summary judgment for Defendants Verizon is warranted because even assuming Spherix's proposed constructions, there is no genuine issue as to any material fact that Verizon's accused products do not literally meet all the limitations of Claim 1.

### 4. Verizon's MoCA ONTs do not Literally Meet All of the Added Limitations of Dependent Claims 2, 3, and 5–9.

Spherix argues that each of the asserted dependent claims are also literally infringed by Verizon's accused products. Specifically, as to Claims 2 and 3, Spherix contends that Verizon's BHRs and STBs (service delivery units) transmit messages in MoCA format (the first format) and thus "all of the different types of service delivery units in the family" of service delivery units, *i.e.,* Verizon's MoCA capable BHRs and STBs "process data in the first format" as required by the claims. As to Claims 5 and 6, Spherix maintains that Verizon's MoCA capable ONTs meet Claim 5 because they interface with Verizon's FiOS network, which is a broadband medium, and Claim 6, because the ONTs are used for providing network services like FiOS internet and FiOS TV enhanced video services. Spherix argues that Verizon's ONTs infringe Claim 7 under both parties' construction because Verizon's MoCA ONTs have an "F connector" "for electrically and physically connecting to the service delivery unit," *e.g.,* BHR or STB. Finally, Spherix argues that Claims 8 and 9 are satisfied by Verizon's MoCA ONTs, because the medium module circuitry in the ONTs contains a network physical layer and media access control module in addition to the BHRs, STBs, and ONTs being physically separated.

Verizon contends that to the extent the Claims are not indefinite, the STB in the FiOS system does not "process data in the first format." First, Verizon notes that "messages received in a first format" must necessarily mean "messages transmitted by the NIU to the SDU in a first format," the first format being the format for direct NIU–to–SDU communications, not for communications between the SDU and some other device. Thus, Verizon argues its ONTs do not satisfy Claim 3 because messages transmitted between its ONTs and STBs are not sent directly to the STB by the ONT but are transmitted by the

ONT to the BHR, which performs further processing before sending such messages to the STB.

Next, Verizon contends that its BHRs and STBs do not constitute a "family of different types of service delivery units" because alone they do not constitute all of the service delivery units in the system. Specifically, Verizon notes that the accused ONTs also contain a telephony interface that can also connect to the service delivery units that are part of the family at issue. Verizon further argues that its BHRs and STBs do not necessarily process data in the same MoCA format. Namely, Verizon notes that there are multiple MoCA standards, including MoCA versions 1.0, 1.1, and 2.0, where in some FiOS installations, the MoCA channel between the ONT and the BHR use MoCA 1.1, while the BHR and STB operate using MoCA 2.0.

Finally, Verizon maintains that the "F connector" on the accused ONTs cannot be read to satisfy Claim 7, because the base station for the cordless phone, which is part of the family pursuant to Verizon's definition, do not have "F connectors," and hence do not satisfy the limitation.

Verizon's MoCA ONTs are not network interface units. Verizon's BHRs and STBs are not service delivery units. Verizon's MoCA ONTs do not literally meet all the limitations of independent Claim 1 or dependent Claims 2, 3, and 5–9. Accordingly, the Court grants Defendants Summary Judgment because Defendants' accused products do not infringe the '564 patent.

### C. Anticipation and Laches, Licensing, and Failure-to-Mark Defenses

Defendants' next argue that the '564 patent is anticipated by prior art, namely U.S. Patnet No. 6,229,810 (the "Gerszberg patent") and Packet Port. Defendants also ask the Court to grant summary judgment on its laches, licensing, and failure-to-mark defenses. The Court does not reach these two arguments because as set forth, the Court finds summary judgment in favor of Defendants is warranted on grounds that the asserted claims are invalid as indefinite, as well as a finding of non-infringement. Accordingly, the Court does not decide whether the '564 patent is anticipated or whether Defendants' laches, licensing, and failure-to-mark defenses are valid.

## IV. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that Defendants' Motion for Summary Judgment, Summary Adjudication and Entry of Proposed Claims Constructions (Doc. 204) is **GRANTED**; it is further

**ORDERED** that Spherix's Motion for Partial Summary Judgment and Entry of Proposed Claim Construction (Doc. 217) is **DENIED**; and it is further

**ORDERED** that the Clerk of Court close this matter.